UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-CV-706-MR

| | |
|---|---|
| DARLENE M. HELMS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social )<br>Security )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 14].

**I. PROCEDURAL BACKGROUND**

The Plaintiff, Darlene M. Helms ("Plaintiff"), asserts that her peripheral neuropathy and degenerative disc disease constitute physical impairments under the Social Security Act (the "Act") rendering her disabled. On May 7, 2014, the Plaintiff filed an application for disability insurance benefits under Title II and Title XVIII of the Act, alleging an onset date of December 30, 2011. [Transcript ("T.") at 157]. The Plaintiff's application was denied initially

and upon reconsideration. [T. at 81, 91]. Upon Plaintiff's request, a hearing was held on March 20, 2017, before an Administrative Law Judge ("ALJ"). [T. at 29-48]. Present at the hearing were the Plaintiff, the Plaintiff's attorney, and a vocational expert ("VE"). [T. at 29]. On April 11, 2017, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [T. at 12-21]. On October 6, 2017, the Appeals Council denied the Plaintiff's request for review [T. at 1], thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

### III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or

work experience.  Id.  If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC").  The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions.  SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634.  If the claimant can still perform his or her past work, then the claimant is not disabled.  Id.  Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner.  At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy.  Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006).  "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."  20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635.  If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the

application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity from her alleged onset date, December 30, 2011, through her date last insured, June 30, 2016. [T. at 14]. At step two, the ALJ found that the Plaintiff has severe impairments including peripheral neuropathy and degenerative disc disease. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 15]. The ALJ then determined that the Plaintiff, notwithstanding her impairments, has the RFC:

> [T]o lift and carry, push and pull 10 pounds occasionally, and less than 10 pounds frequently. With normal breaks in an eight-hour day, she could sit for six hours, and/or walk for two hours; could never climb ladders, ropes, and scaffolds; could occasionally climb ramps and stairs; and could occasionally balance, stoop, kneel, crouch, and crawl.[1]

[Id. at 15-16].

---

[1] The ALJ's RFC assessment fails to limit the Plaintiff to any particular level of work (e.g., medium, light, sedentary). While the ALJ references the impact of Plaintiff's limitations on "the unskilled sedentary occupational base" in his step five analysis, he never explicitly limits the Plaintiff to sedentary work. [Doc. 20]. The Plaintiff, however, does not assign error to this omission and the Court does not address it further.

At step four, the ALJ identified Plaintiff's past relevant work as an order filler/industrial truck operator, knitting machine operator, creeler, and winding rack operator. [Id. at 19]. The ALJ observed that the VE "testified that the [Plaintiff], considering her residual functional capacity, could not perform any of her past relevant work as she actually performed it or as it is generally performed in the national economy." [Id.]. At step five, based on the testimony of the VE, the ALJ concluded, considering the claimant's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including table worker/fabricator, final assembler, and hand bander. [Id. at 20]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act at any time from December 30, 2011, the alleged date of onset, through June 30, 2016, the date last insured. [Id.].

## V. DISCUSSION[2]

In this appeal, the Plaintiff presents two assignments of error as grounds for reversal of the ALJ's decision. First, Plaintiff contends that the ALJ failed to give "good reasons" for rejecting the opinion of Plaintiff's treating physician, Wesley Marquand, M.D. [Doc. 12 at 3]. Second, Plaintiff

---

[2] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

contends that the ALJ failed to evaluate the limitations imposed by Plaintiff's non-severe mental impairments and her obesity in assessing the Plaintiff's RFC. [Id.]. The Plaintiff argues these errors require remand. The Defendant, on the other hand, contends the ALJ's decision was supported by substantial evidence and should be affirmed. [Doc. 15 at 2]. The Court turns to Plaintiff's first assignment of error.

In making disability determinations, the Regulations require ALJs to consider all medical opinions of record, regardless of their source. 20 C.F.R. §§ 404.1527(c), 416.927(c); 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."); SSR 06-03p (The ALJ must "consider all of the available evidence in the individual's case record in every case."). "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

Furthermore, the ALJ must always give "good reasons" in his decision "for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on the nature and severity of an individual's impairment(s)." SSR 96-2P. Furthermore, for treating source opinions:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, <u>supported by the evidence in the case record</u>, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

<u>Id.</u> (emphasis added). Generally, more weight will be given to an opinion of a medical source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c). Further, more weight will generally be given to opinions from a claimant's treating sources than from sources rendering an opinion based upon a single or limited examination of a claimant. <u>Id.</u>

Dr. Marquand is a specialist in the field of family medicine. According to the record, Dr. Marquand examined the Plaintiff at least 26 times between December 17, 2012 and November 14, 2016. [T. at 334-384]. The opinions at issue were provided by Dr. Marquand in a Medical Source Statement of Ability to Do Work-Related Activities (Physical) (the "Statement"), which he prepared on March 15, 2017. [T. at 398-401]. In the Statement, Dr. Marquand listed the Plaintiff's diagnoses as degenerative disc disease, neuropathy, pinched/herniated disc L4/L5, and osteoarthritis. [T. at 399]. Dr. Marquand opined that these medical conditions limited the Plaintiff's ability to engage in certain physical activities as follows: (1) only occasionally lifting

and/or carrying objects less than 10 pounds; (2) standing and/or walking less than 2 hours in an 8-hour workday; (3) periodically alternating sitting and standing to relieve pain or discomfort; (4) limited pushing and/or pulling in her upper and lower extremities; (5) only occasional balancing and kneeling; (6) no crawling, stooping, or climbing ramps, stairs, ladders, ropes, or scaffolds; and (7) limited manipulative functions, including reaching all directions, handling, fingering, and feeling. [T. at 398-400].

The ALJ gave "little weight" to Dr. Marquand's opinions, finding them to be "not supportable" for several reasons. [T. at 17-18]. Specifically, the ALJ noted, without citation to any supportive record evidence, that:

> Dr. Marquand used a check the box, short answer format, with no narrative showing treatment visit complaints, examination results, or radiological testing to explain and substantiate his opinion. While there is [a] February 16, 2014, MRI of the claimant's lumbar spine that showed transitional vertebra at lumbrosacral junction labeled as L5, mild disc bulging at L3-L4, and annular tearing and mild broad based disc protrusion at L4-L5 with nerve root encroachment and disc space narrowing/facet arthrosis, the claimant's physical examinations were normal. In addition, she testified that the medication helped her pain. In her function report, she reported good activities of daily living. Furthermore, her pain and neuropathy did not prevent her from performing moderate exercise and taking care of her disabled husband.

[Id.].

This explanation by the ALJ is insufficient. He fails to provide good, specific reasons with citation to the record evidence in his decision for the weight he ascribed to Dr. Marquand's opinions. First, with respect to the "check box form" used by Dr. Marquand, this form is one provided by the Social Security Administration for the very purpose of rendering medical source opinions. There is no direction or space on the form to supply "treatment visit complaints, examination results, or radiological testing to explain and substantiate [the] opinion." [T. at 18, 398]. Furthermore, the record contains many treatment notes related to Dr. Marquand's care of the Plaintiff, which include treatment visit complaints and examination results. [T. at 334-384]. Therefore, the use of this form by Dr. Marquand is not a "good reason" to assign little weight to his opinions.

Second, the ALJ's reliance on the Plaintiff's "normal" physical examination results as a "good reason" for discrediting Dr. Marquand's opinion is also misplaced. While some of the Plaintiff's physical examinations by Dr. Marquand were noted as "normal," the body systems and symptoms involved in these examinations were not related to the Plaintiff's severe impairments. For example, the Plaintiff's "normal" neck, lungs, cardiovascular system, musculoskeletal system, and skin do not speak or relate to the neuropathy in her feet or the sharp and worsening pain

11

her back. The ALJ does not explain or otherwise support how these "normal" physical examination results at some visits with Dr. Marquand supports the ALJ's decision to assign little weight to Dr. Marquand's opinions regarding Plaintiff's limitations. Further, Dr. Marquand's treatment notes contain ample findings that are consistent with his opinions at issue. [T. at 340-41, 346, 349-50, 359-60, 363, 366, 368-70].

Third, the ALJ points to the Plaintiff's testimony that medication helps her pain as a basis for discrediting Dr. Marquand's opinions. [T. at 18]. The ALJ fails, however, to cite specifically to any of this testimony or explain how some pain reduction through medication discredits Dr. Marquand's findings. [See T. at 18]. A comprehensive review of the Plaintiff's testimony on the effect of medication on her pain reveals that (1) pain medication "helps" her chronic, constant pain [T. at 43]; (2) pain medication eases her pain only enough to do small chores around the house, but that doing the chores causes the pain to "start[ ] all over again, real bad hurting," causing her to sit or lay down, sometimes for up to two hours [T. at 45]; (3) her pain keeps her awake at night despite taking Ambien [Id.]; (4) and multiple epidural steroid injections did not help her pain [T. at 45]. As such, the Plaintiff's testimony regarding the modest pain reduction achieved through medication does not support the ALJ's decision to assign little weight to Dr. Marquand's opinions.

Fourth, the ALJ states that the Plaintiff's reported "good" activities of daily living in her Function Report support his decision to assign little weight to Dr. Marquand's opinions. In her Function Report, the Plaintiff described her activities "from the time [she] wakes up until going to bed" as follows:

> Sit outside, try to walk as much as possible with my problems with my feet, fix lunch, sit on the couch, take a nap (on the count [*sic*] of my meds)[,] go to mailbox, watch TV, eat supper, take a shower, go to bed.

[T. at 189]. The ALJ fails to explain how the ability to engage in these relatively limited activities of daily living undermines any of Dr. Marquand's opinions. Accordingly, these so-called "good" activities of daily living are not a "good reason" to ascribe little weight to Dr. Marquand's opinions.

Finally, in support of the weight assigned to Dr. Marquand's opinions, the ALJ finds it significant that Plaintiff's "pain and neuropathy did not prevent her from performing moderate exercise and taking care of her disabled husband." [T. at 18]. These findings are not supported by the record evidence. In her Function Report, the Plaintiff specifically stated she can *no longer* "exercise regularly" as a result of her conditions. [T. at 190]. Further, the Plaintiff testified that she "fix[es] little easy microwave dinners or something like that for me or my husband to eat." [T. at 40]. The ALJ does not cite (and the record does not appear to support) any other acts of

13

caregiving by the Plaintiff for her disabled husband. The minimal amount of caretaking provided by the Plaintiff does not support the ALJ's rejection of Dr. Marquand's opinions.

In conclusion, the ALJ failed to cite good reasons, supported by citations to the record evidence, for rejecting the opinions of the Plaintiff's treating physician. As such, the ALJ's conclusion regarding the weight of Dr. Marquand's medical opinions was not supported by substantial evidence.

In light of this decision, Plaintiff's other assignment of error need not be addressed but may be addressed by her on remand.

## VI. CONCLUSION

For the reasons stated, remand is required. On remand, the ALJ shall properly weigh all medical opinions, including but not limited to the medical opinions of Plaintiff's treating physician, Dr. Marquand, as more fully set forth in this opinion and in accordance with Rule 96-2P. The ALJ is also directed to address the other issues presented by the Plaintiff.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 11] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 14] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of

the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.  A judgment shall be entered simultaneously herewith.

    **IT IS ORDERED.**

Signed: January 23, 2019

Martin Reidinger
United States District Judge